c

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **BRANDI STALNAKER,** Plaintiff | **CIVIL ACTION NO. 1:20-CV-01292** |
| **VERSUS** | **JUDGE JOSEPH** |
| **BAKER HUGHES, A GE COMPANY, LLC,** *ET AL.,* Defendants | **MAGISTRATE JUDGE PEREZ-MONTES** |

## <u>REPORT AND RECOMMENDATION</u>

Before the Court is a Motion to Remand and For Attorney Fees ("Motion to Remand") (ECF No. 5) filed by Plaintiff Brandi Stalnaker ("Stalnaker"). Stalnaker asserts that Defendants Baker Hughes, a GE Company, L.L.C. (now known as Baker Hughes Holdings L.L.C.) and Dresser, L.L.C. (collectively, "Dresser") fail to establish diversity jurisdiction and that this matter should be remanded for lack of jurisdiction. ECF No. 5 at 1. Stalnaker also seeks attorney's fees under 28 U.S.C. § 1447(c). *Id.* at 4. Dresser opposes.[1] ECF No. 9.

Because the Louisiana Department of Environmental Quality ("LDEQ") was improperly joined and there is complete diversity among the properly joined parties, Stalnaker's Motion to Remand and For Attorney Fees (ECF No. 5) should be DENIED.

---

[1] Stalnaker responds that Dresser's opposition is untimely. ECF No. 10. However, the Court finds that Dresser timely filed its opposition on November 3, 2020 – the last day to file a response. ECF Nos. 6, 9.

I.    <u>Background</u>

On August 4, 2020, Stalnaker filed suit in the Ninth Judicial District against Dresser and LDEQ.  ECF No. 1-1.  Stalnaker alleges that, on November 23, 2011, Dresser personnel were replacing damaged fire-water suppression system components at the Dresser Flow and Process Technology Facility located at 8011 Shreveport Highway, Pineville, Louisiana (the "Site" or "Facility").  *Id.* at 1. Stalnaker asserts that during the excavation of one of the fire hydrants, the equipment operator fractured the hydrant and residential firewater from within the system transmission filled the excavation (the "Spill"), contaminating the soil and nearby groundwater.  *Id.*

Stalnaker contends Dresser first notified LDEQ of the Spill on June 28, 2012. *Id.* at 2.  She asserts Dresser did not initially analyze the Spill for volatile organic compounds until LDEQ insisted.  *Id.*  Stalnaker alleges that in 2014, Dresser first reported to LDEQ its analysis of all soil and groundwater samples for full-scan volatile organic compounds.  *Id.*  She asserts that, at that time, LDEQ first learned the soil and groundwater samples were contaminated with Trichloroethylene ("TCE"), which is carcinogenic to humans.  *Id.*  Stalnaker avers the TCE contamination was caused by the Spill.  *Id.*

Stalnaker asserts that Dresser has been monitoring the TCE from the Spill since at least 2014, and that by 2014, LDEQ knew or should have known that the TCE from the Spill had "off-site impact." *Id.* at 2-3.  She states that under Louisiana Administrative Code Title 33, Part 1, Section 109, LDEQ was required to issue notice

of the Spill to the area affected within 30 days from when LDEQ knew or should have known of the Spill's off-site impact to the health of residents. *Id.*

Stalnaker alleges that the toxic substances from the Spill, including but not limited to TCE and PCE, are causing damages to her. *Id.* She asserts LDEQ's acts of fault, gross and wanton negligence, and lack of skill are the proximate of her damages. *Id.* Stalnaker alleges LDEQ violated its duty under Louisiana Administrative Code Title 33, Part 1, Section 109 to issue notice to Stalnaker within 30 days of its knowledge that the Spill posed a significant risk of adverse health effects to her. *Id.* at 4. She contends this duty is non-discretionary. *Id.* She also asserts LDEQ failed to properly dispose of hazardous waste, failed to monitor the Facility after 2012, failed to check waste disposal procedures at the Facility, failed to notify and warn the affected residential area, and failed to implement procedures to protect the affected residential area. *Id.*

Stalnaker seeks damages for past and future medical expenses, including seizures, associated headaches, mental anguish and distress, and loss of enjoyment of life. *Id.* She also asserts property damages, including a total loss of property, costs of clean-up, repairs, and devaluation of property. *Id.*

On October 2, 2020, Dresser removed under diversity jurisdiction. ECF No. 1. Dresser alleges that Stalnaker is a Louisiana citizen and that Dresser is a citizen of Delaware, Ohio, and Texas. *Id.* at 3. Dresser further alleges that based on the damages claimed, it is "facially apparent" that the claims are likely above $75,000. *Id.* Dresser contends that, although LDEQ has no citizenship for purposes of

diversity jurisdiction and would generally preclude removal, LDEQ is improperly joined and removal was proper. *Id.*

Stalnaker now seeks remand for lack of diversity jurisdiction, arguing that LDEQ's joinder was proper. ECF No. 5.  Dresser opposes.  ECF No. 9.

## II.    Law and Analysis

### A.    Standards governing the Motion to Remand.

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014).  Subject matter jurisdiction must exist at the time of removal, based on the facts and allegations contained in the complaint. *See St. Paul Reinsurance Co. Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).  A federal court has "diversity jurisdiction" where the amount-in-controversy exceeds $75,000, exclusive of interest and costs, and where complete diversity exists between the parties. *See* 28 U.S.C. § 1332(a).

Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).  The removing party bears the burden of establishing diversity jurisdiction. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013).  "Any ambiguities are construed against removal and in favor of remand to state court." *Id.*.  Here, the parties do not dispute whether the amount-in-controversy requirement is met, but dispute whether there is complete diversity among the parties.

**B.**    <u>Dresser bears the burden of establishing improper joinder.</u>

The issue before the Court is the alleged improper joinder of LDEQ, a non-diverse Defendant. ECF Nos. 1, 5. The doctrine of improper joinder is a narrow exception to the complete diversity requirement. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). The removal statutes "entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing 28 U.S.C. § 1441(b)). "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.*

"To establish improper joinder, the removing party must demonstrate either: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Cuevas*, 648 F.3d at 249 (quoting *Smallwood*, 385 F.3d at 573). When, as here, the second method is at issue,

> the test is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. If there is no reasonable basis of recovery, then the court can conclude that the plaintiff's decision to join the in-state defendant was indeed improper, unless that showing compels the dismissal of all defendants.

*Cuevas*, 648 F.3d at 249 (internal citations and quotations omitted) (emphasis added).[2] "A mere theoretical possibility of recovery in state court will not preclude a

---

[2] Dresser does not allege there is actual fraud in the pleadings.

finding of improper joinder." *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014).

The removing party "bears a heavy burden of proving that the joinder of the in-state party was improper . . . that is, to show that sham defendants were added to defeat jurisdiction." *Smallwood*, 385 F.3d at 574-75; *see also Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). A court does not determine whether a plaintiff will actually or even probably prevail on the merits of the claim, but looks only for a possibility that a plaintiff might do so. *Guillory v. PPG Indust., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005) (citations omitted). "Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

C.   **The Court determines a Rule 12(b)(6)-type analysis is appropriate to determine whether Stalnaker's Complaint (ECF No. 1-1) states a claim with a reasonable basis for recovery against non-diverse Defendant LDEQ.**

Dresser argues Stalnaker has no possibility of recovery, or "no reasonable basis" of recovery, against non-diverse Defendant LDEQ. The "no reasonable basis" contest may take place in two different settings. In the first, a defendant challenges the adequacy of the plaintiff's pleadings, without the submission of evidence. A court conducts a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim under state law against the in-state defendant. *Smallwood*, 385 F.3d at 573 (citations omitted).

However, merely pleading a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant, does not mean that the joinder

6

of the resident defendant is proper. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004) (citations omitted).  In the second setting for the "no reasonable basis" contest, a defendant may challenge the plaintiff's allegations and attempt to demonstrate by "summary-judgment-type" evidence that the plaintiff is unable to prove all the facts necessary to prevail. *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016).  "[A] court may choose to use either one of these two analyses, but it must use one and only one of them, not neither or both." *Id.*; *see also Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) ("[T]he decision regarding the procedure necessary in a given case must lie within the discretion of the trial court.").

The Fifth Circuit cautions against piercing the pleadings, except in limited circumstances. *Smallwood*, 385 F.3d at 537.  The Fifth Circuit has instructed that:

> Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (citations omitted).  Thus, the summary inquiry determines if there are "discrete and undisputed facts that would preclude recovery against the in-state defendant." *Id.* at 573-74 (citing as examples where "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved as not true"). A court may proceed beyond the pleadings to analyze "whether the defendant has demonstrated

7

that there is no possibility of recovery." *Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018) (citing *Smallwood*, 385 F.3d at 573)). Although a court may consider "summary judgment-type evidence in the record," it must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649.

Here, no summary judgment-type evidence has been submitted by the parties and a Rule 12(b)(6)-type analysis is appropriate. The Court need not pierce the pleadings to determine whether the complaint states a cognizable claim under state law against LDEQ. *See Smallwood*, 385 F.3d at 573-74.

### D.    Stalnaker fails to state a claim under state law against in-state Defendant LDEQ and its joinder is improper.

Stalnaker seeks remand, asserting LDEQ has been properly joined and served and has not consented or joined in the removal.[3] ECF No. 5 at 1. She asserts LDEQ is a real party in interest in this suit, the presence of which defeats diversity jurisdiction. *Id.* Stalnaker argues that La. R.S. 9:2798.1(C)(2) provides an exception to immunity granted to public entities for policymaking or discretionary acts for "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." *Id.* at 2.

---

[3] "[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). However, the United States Court of Appeals for the Fifth Circuit has "made clear that a removing defendant 'need not obtain the consent of a co-defendant that the removing party contends is improperly joined.'" *Mauldin v. Allstate Ins. Co.*, 757 Fed.Appx. 304, 309 (5th Cir. 2018), *cert. denied*, 18-1456, 2019 WL 4921383 (2019). Thus, LDEQ's consent was not required.

Stalnaker alleges that Dresser notified LDEQ of the Spill on June 28, 2012. *Id.* at 3. She states Dresser first reported to LDEQ in 2014 its analysis of all soil and groundwater samples for full-scan volatile organic compounds from the Spill. *Id.* at 3. Stalnaker asserts that, at that time, LDEQ first learned the soil and groundwater samples were contaminated with TCE. *Id.* And that by 2016, LDEQ knew that the TCE from the Spill had an off-site impact. *Id.*

Stalnaker alleges that under Louisiana Administrative Code Title 33, Part 1, Section 109, LDEQ had a duty to issue notice of the Spill to the area affected because the Spill poses a significant risk of adverse health effects. *Id.* Stalnaker argues LDEQ did not notify the public of the off-site impacts of the contaminants to the surrounding residential area until December of 2019. *Id.* And she contends that LDEQ's failure to warn her of the Spill that contained contaminants is an "outrageous, reckless, and flagrant omission," exempting LDEQ from immunity under La. R.S. 9:2798.1. *Id.* She argues she asserts a cause of action against non-diverse defendant LDEQ and that this case should be remanded. *Id.*

Dresser asserts that the only non-diverse party LDEQ was improperly joined, as Stalnaker cannot state a cause of action under Louisiana law against LDEQ. ECF No. 9 at 5. Dresser argues Stalnaker's claims against LDEQ fail on the face of the pleadings. *Id.* at 7. Namely, Dresser argues Stalnaker fails to identify an actionable duty owed her by LDEQ, fails to follow Louisiana's Administrative Procedures Act for her regulatory complaints, and fails to circumvent the bar on state liability for private acts. *Id.* The Court must ascertain whether Stalnaker's claims against LDEQ would

survive a Rule (12)(b)(6) challenge such that there is no improper joinder.  *See Smallwood*, 385 F.3d at 573.

Under Rule 12(b)(6), the Court must determine whether the "complaint . . . contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Waste Mgmt., Inc. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 533 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). In applying this standard, the court must "[accept] all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

In a related Dresser case, this Court denied a similar motion to remand on the basis that the landowners failed to state a cognizable negligence claim under Louisiana law against LDEQ and thus LDEQ was improperly joined and its presence should be disregarded as a party for purposes of diversity jurisdiction.  *See D & J Investments of Cenla LLC v. Baker Hughes A GE Co., LLC*, 501 F. Supp. 3d 389 (W.D. La. Nov. 18, 2020).  There, the Court stated:

> Federal jurisprudence is clear that "a state is not a 'citizen' for purposes of diversity jurisdiction." *Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983). It follows that in an action where a state is a party, § 1332 generally does not provide a basis for subject matter jurisdiction. *See Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 571 (5th Cir. 2015) ("Ordinarily '[i]n an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction.' "). Likewise, an entity that is "merely an alter ego of the state," such as the DEQ, is not considered a citizen under § 1332. *See Watkins v. Louisiana Dep't of Transp. & Dev.*, CIV.A. 09-1743, 2010 WL 744911, at *2 (W.D. La. Feb. 26, 2010) (holding that the Louisiana Department of Transportation and Development is "equivalent to the State of Louisiana for purposes of determining diversity of citizenship.").

*Id.* at 395.

Citing La. R.S. 30:2011(A)(1), the Court noted the landowners failed "to demonstrate how the statutory and state constitutional provisions give rise to a specific duty on the part of DEQ to inform them of reported contamination within a particular timeframe or to otherwise see remediation in any particular manner." *Id.* at 397 (also noting Louisiana statutes indicate the Louisiana legislature intended for DEQ to serve in a purely regulatory capacity and not to bear civil liability for environmental harm by private parties).

Here, it is undisputed that Stalnaker is a citizen of Louisiana, that Dresser is a citizen of Delaware, Ohio, and Texas, and that the amount in controversy exceeds $75,000. *See* ECF Nos. 1-1, 5, and 9 at 6. Citing those same statutory provisions previously rejected by this Court, Stalnaker asserts she states a cause of action and alleges LDEQ owed a duty under those provisions to provide notice of the off-site impacts posing a risk to her. ECF No. 5 at 1-5. However, for the same reasons set forth by this Court previously, the undersigned finds Stalnaker fails to state a cognizable claim for relief against LDEQ. Dresser meets its burden of establishing improper joinder of LDEQ, and LDEQ's presence should be disregarded in determining complete diversity among the properly joined parties.

Otherwise, it is undisputed diversity jurisdiction exists absent LDEQ's presence. Thus, the Court has diversity jurisdiction and Stalnaker's Motion to Remand and For Attorney Fees (ECF No. 5) should be DENIED.

III.   <u>Conclusion</u>

Because LDEQ is improperly joined and there is complete diversity among the properly joined parties;

IT IS RECOMMENDED that Stalnaker's Motion to Remand and For Attorney Fees (ECF No. 5) be DENIED.

IT IS FURTHER RECOMMENDED that Stalnaker's claims against the LDEQ be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court.  The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed. R. Civ. P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 30th day of July 2021.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE